Mourelo v Commissioner of Internal Revenue Service Mr. Rogo, good morning. May it please the Court, Bruce Rogo, Howard Gordon, and Alyssa Razukwan. Mr. Rogo, you've appeared before me so many times, and I always get your name wrong. I apologize. Rogo is right. Rogo is right. Thank you. Had the affiliated companies that Mr. Mourelo had a substantial interest in, 50% interest, had those affiliated companies sent the monies to Mr. Mourelo and Mr. Mourelo then sent them to Merco, there'd be no dispute in this case that there was a bona fide indebtedness. What the government argues, and what the tax court decision below found, was that the affiliated companies sent the monies directly to Merco, and therefore there was no indebtedness that Mr. Mourelo could claim on his tax return. Can I ask you just a quick question that I think your opening kind of tees up for me? As I read the reg, there are two requirements, and tell me if you disagree with this. One, there's got to be bona fide indebtedness, which is what you were about to talk about, and two, separately, that indebtedness has to run directly to the taxpayer. Correct? Yes. So, true, I think in your opening, had the affiliated companies sent to Mourelo, Mourelo sends to Merco, it's coming directly out of his pocket. But here, it seems to me, the transfer is, vis-a-vis Mourelo, indirect. So I'm sort of less interested, at least for present purposes, in bona fide indebtedness, and I know that that's what the whole appeal is about. But what about this separate, standalone requirement that the indebtedness must run directly to? And it does run directly to him through the incorporated pocket book. That sounds to me like indirect. When you say directly to through something else, that sounds like indirect. The cases have held that incorporated pocket book does work to meet that standard. A couple of threshold things I think are important here. One is that there are no rigid rules here in making this determination. And when you'll hear the government talk about general federal tax principles, but that does not pinpoint what the issue is in this case. Yes, bona fide indebtedness obviously is the threshold, the beginning, but he was indebted as a result of those transfers. Now, this always reminded me, when I looked at this, Tinker's to Evers to Chance. I'm sure that hopefully you remember Tinker's to Evers to Chance, the double play combination from shortstop to second to first. Your problem is you've got two Alabamians here who love football and a Kansas girl who loves basketball. So, you know, sorry. I think there's a general understanding, and the point I'm trying to make is that Tinker's to Evers to Chance would be the affiliated companies to Meruelo to Merco. That would be Tinker's to Evers to Chance, and there'd be a double play and the runner would be out. But if Tinker's simply stepped on second base and threw to chance, then the runner would be out there too. And so the point is... But Evers is the taxpayer here, right? In your analogy, Evers, the second baseman, is the taxpayer. That's right. But Evers in your, let me get my players here right, Tinker, Tinker's... It's a shortstop. Yeah, the shortstop, if he steps on second, the second baseman is not, he's not affiliated with the play. Well, he is affiliated. He's a bystander. He's enjoying the fact that there's a double play, but he's not a participant in that double play. But the question is the end result, and that's what I'm focusing on. The end result is the same. The runner is out. The end result here is the same. You just read directly runs out of the reg, it seems to me. Because when one looks at directly runs, you have to look at it in light of all of the I mean, it is not just simply to say, directly runs is the end of the inquiry, because obviously incorporated pocketbook allows a kind of an indirect... Yeah, kind of indirect. That's right. But, yes, but incorporated pocketbook works, there's no question about it. In fact, the decision below talked about incorporated pocketbook. I think the threshold problem with the decision below is it started with actual economic outlay. And that, said nine times in the decision below, is not the standard. The standard is much looser. There are no rigid rules. And I start... Yeah, see, my problem is I'm in the same position, I think, that Judge Newsom is. I mean, I think there's substantial doubt about whether there's a bona fide indebtedness here. It just seems to me to be kind of beside the point because it's so clear that this debt didn't run directly to the taxpayer. When one looks, Judge Pryor, at Yates... Ran through the affiliates. And Cullinan, I mean, you see the same kind of patterns in these cases. I mean, beginning with Ruckriegel, which says it's not unusual to conduct business through multiple entities. And that's really what we're talking about here. He's conducting business... It may not be unusual, but that doesn't mean the debt ran directly to the taxpayer. It does because when this was booked, when this was shown on the records... Well after the fact. Well after the fact. It's interesting. If this was 2004 or 5, today, and this I think plays into exactly what I'm trying to convey, today two keystrokes could have made this the kind of direct, and the way the court has described it, direct transfer. Just two keystrokes. In fairness, not the way the court has described it, the way that the IRS has described it in the reg. But again, that would be direct in terms of two keystrokes. What is the difference between being direct by virtue of the accountant at the end of the year booking these because these were loans, basically, that Morello was responsible for? So there is no practical difference. I mean, I think that the difficulty here is that the tax court below, and the government's going to argue, that there was no bona fide indebtedness. Now Judge Newsom, you suggest that perhaps you do see some bona fide indebtedness. Well I'm not sure about that. I just wonder if there is sort of a separate, standalone issue that nobody seems to be talking about. This runs directly to Prong, which I read to be a separate, standalone requirement. And if it is, I mean, I don't know. Are the incorporated pocketbook cases in the tax court? Remind me, are those like constructions of that phrase? Are those interpretations of the phrase runs directly to? Or are they just kind of like, eh, substance over form? No, I think they address exactly that under the broader concept of that there are different ways of doing business and you still can have it be direct. I mean, that's dealing with wholly owned corporate entities, right? Where the taxpayer has a habitual practice of using that wholly owned corporation to pay money to third parties on his behalf. Exactly right. And that's what's happened in this case. It was habitual.  He was a 50% holder. It was a wholly owned corporation? No. I don't think the distinction, Judge Pryor, is based on wholly owned or not. I think that may be a fact that was present in those cases. But for example, in the Yates case, there were skipped steps. In Yates, Foxtrot was a farm that the Yates' had. And there was money transferred from Adina, this other company, to a joint account and then transferred by Mrs. Yates to Foxtrot. And the court said, that's all right. So was that direct or was that indirect? It was something that was done. It was recognized. It was booked in the proper way. And the court found that this met the incorporated pocketbook theory. So tell me this, and I'm quite sure that you know Yates and Cullen better than I do, but are those cases, back to my earlier question, are those interpretations of the phrase runs directly to, is the tax court in those cases saying, we see the runs directly to language and we think that the incorporated pocketbook theory meets that? Or were they talking about bona fide indebtedness or something else and not really dealing with runs directly to? I'm looking at Cullen and it talks about and explaining the statutory requirement that the indebtedness of the S Corporation must run directly to the shareholder. We made it clear that indebtedness, etc., etc., to an entity with pass-through characteristics. So they do use that. And then they say, but we've got this pocketbook thing and that meets runs directly to. Not always. It can. And Yates is a good. It's a wholly owned corporation, for example. Well, but remember, he's only, the part that would adjust his basis would be the portion that he owns from the corporation from Merco. And this is a loan that's been made, again, the example has been made from his affiliated company to him and then to Merco. That's how it's booked. That's how it shows. That's the reality of it. And so that would meet the kind of indebtedness. That would meet the direct, even though I understand, you know, words are interesting here. And this point about, does direct also mean indirect? No. What it means is, is that there is an obligation and the obligation, Meruelo had the obligation and the obligation was paid, in effect, by him and it was shown on the books. This was not done. Isn't it true that the tax court said no court has ever ruled that the non-wholly owned entity that both receives and disburses funds constitutes an incorporated pocket book company? I don't remember that in the tax court decision, but, but again, you know, Judge Breyer, you know that that wouldn't stand in my way of making an argument. I understand. This is the way it's, this is the way it should be viewed because it's the practical way. I mean, what, what was done here was exactly what is done in these incorporated pocket book theories. And the only, that's why I start out with the example I started out with, because really had, had the keystroke said, okay, this is Meruelo's money and now Meruelo is sending it to Merco, we wouldn't, we wouldn't be here. Well, that doesn't make any sense in terms of the reality of the situation and in terms of this case and in terms of even this court's decisions with regard, and this goes back to indebtedness Lane and, and, and Ellinger talking about what are the indicia and among the indicia are a note, there's certainly a note, there's a, there's a interest rate on the note. All of those, I think there are 13 indicia. Most of those are present here. You don't have to have all of them present. But again, let me save the balance of my time for, for rebuttal. But I stick to my guns. This was a transfer that accorded him an adjusted basis. Thank you, Mr. Rogo. You saved three minutes for rebuttal. Mr. Sheehan. May it please the court, I'm Anthony Sheehan on behalf of the Commissioner of Internal Revenue. It's interesting we talk about Tinker to Evers to Chance because I'm originally from Chicago and a lifelong Cubs fan, and that was a Cubs combination. Oh, glad. That's the first I knew of that. Thank you. The problem, of course, is that the play here went directly from Tinkers to Chance. That the- Do you know what to a Devante Smith it was? So you don't. We speak different languages, Mr. Sheehan. I can assure you he's making the same point you are by reference to a different sport and a different state. Okay. I will take your word for it. Thank you, Judge Newsom. The problem here is that the transactions here were all done among the affiliated group, were all done at the corporate level. They were money flowed at the corporate level, they were booked at the corporate level. There was no correction, there was no, I wouldn't even say correction, there was no adjusting entry made until well after the year closed, the tax time. What really is going on here is that- Can we just affirm based on the debt, even if there were a debt, that it didn't run directly to the taxpayer? Yes, you could affirm on that. The debt ran back and forth amongst the companies of the affiliated group. Taxation is based on analyzing the transaction as it occurred at the time it occurred. Here you've got- Just tell us, help us. I want to make sure that I'm not getting sort of like carried away with some pet theory because you guys, nobody really talked about this in the briefing, at least, you know, in any great detail about the runs directly to component of the reg. But it just seems to me that there's a pretty stark difference between something running directly to and something running indirectly around. But so tell us, I mean, help us if we're off on a tangent here. No, you are absolutely correct. The debt must run directly to the shareholder. In fact, if you look at the example three in the regulations where the flush S-corp loans money to the needy S-corp, then there's a reorganization. And it's only after the reorganization is done where the needy S-corp now owes to the shareholder and no longer owes to the flush S-corp that the shareholder gets basis. The taxpayers cited treatise in their reply brief and that treatise especially, their own treatise makes quite clear this initial loan from the flush S-corp to the needy S-corp did not create shareholder basis. You have to get a loan running directly to the shareholder. I believe in the Phillips case where you were on the panel also said that, Phillips case cited in our brief, there has to be direct indebtedness from the S-corp down to the shareholder. And so he said in response to his counter argument that, well, the shared pocket book theory takes care of all of this. And it sort of interprets the phrase runs directly to you say. I would say that the incorporated pocket book is based on two tax court cases, Yates and Cullinan, that those were very special cases that do not at all match here. You have a wholly owned corporation, a wholly owned corporation that was habitually used by the taxpayer to make payments on his behalf. That's the first step. Here we have a bunch of affiliated companies, group of companies, partially owned, making payments on behalf of each other, on behalf of the group. In Yates and Cullinan, where there may have been some placeholder entries, they were promptly corrected. Yeah, in other words, we don't have any of the indicia that we had in those cases. You don't have any of the indicia. You don't have either a wholly owned corporation nor do you have that habitual practice, right? You don't have the habitual practice of using the money to pay the taxpayer's creditors. You have it, money moving among an affiliated group to help out the affiliated group. You don't have contemporaneous or almost contemporaneous accounting, certainly within the tax year, saying, okay, fine, this is really the taxpayer's money sitting in the pocket book. You don't have the booking of it officially within the tax year of the company receiving the money, recognizing the debt within the tax year running down. You don't have Mr. Meruelo never compensated these affiliated companies for the money they paid on their behalf. Yates and Cullinan, you have the taxpayer saying, yes, indeed, this is being booked as my liabilities and now every so often I'm going to liquidate some assets and pay down what I owe the flush corporation. This case is not an incorporated pocket book case. It does not match any of the indicia that the tax court has recognized. My thinking is that I think I understand Mr. Rogo's position that incorporated pocket book by definition almost is indirect. And he says, how is it that incorporated pocket book coexists as an indirect transfer with this requirement in the reg that there be a direct traceability to the taxpayer? But I mean, far be it from me, I guess anyway, to get too far ahead of the tax court on its understanding of an application of tax principles. But I mean, language matters, and I'd be hard pressed, I think, to extend a doctrine that exists only in the tax court. So far as I'm aware, we have not sort of embraced, bear hugged this incorporated pocket book thing. And I'd be hard pressed to extend it beyond where the tax court has taken it in the face of language that says it's got to be a direct transfer. You are correct. The only two cases where incorporated pocket book was recognized were tax court cases. No other appellate court has recognized it. This would be a large extension of that theory to a case where the facts are just quite different. And I would say the court should not extend it and should just go with the reg and say that we've argued in our brief that there is not indebtedness here. And also, that. But you've also argued that the debt ran to the affiliated companies and not to the taxpayer. That is correct. I just checked your brief. I wanted to make sure I remembered this right. You did argue that. Yes. The debt ran back and forth among the affiliated companies. And it was not until tax time that any recharacterization was done. But taxes are not done that way. The transaction controls the tax returns. The tax returns don't control the transactions. And so, if there are no further questions, we ask the court to affirm. Okay. Thank you. Mr. Rogo, you've got three minutes. You're all that stands between me and a protein shake. The 2014 final regulation, which is the one that we're operating under here, the term's basis of any indebtedness of the S Corporation means the shareholder's adjusted basis in any bona fide indebtedness of the S Corporation that runs directly to the shareholder, the language you pointed out, Judge Newsom, whether indebtedness is bona fide indebtedness to a shareholder is determined under general federal tax principles and depends upon all the facts and circumstances. And I think it's a very cramped reading to view directly to the shareholder as meaning the money has to go. Meaning directly to the shareholder. Pardon me? As meaning directly to the shareholder. As meaning directly to the shareholder in circumstances in which you have back-to-back loans, in which you have affiliated companies, in which the only difference is, had the money been sent to him and then from him to Merco, we wouldn't be here. It would be satisfied. But just in fairness, the language of the regulation, this goes back to the question I first asked you, points up two kind of meta requirements. Bona fide indebtedness, number one, runs directly to, number two. Then in the back half of it, it defines the first of those two meta requirements, bona fide indebtedness, to refer to general tax principles and facts and circumstances. It does not say that general tax principles and facts and circumstances inform the meaning of runs directly to. It doesn't break it out like that. I agree, Judge Newsom. But the point is, when you look at these cases, looking at the realities of the situation, the fact that this money, and that's the only difference is, had it gone to him and then from him to Merco, we would have met everything. But the point is, is that in transactions, in all the cases that talk about how businesses work, this is how businesses work. And it was booked properly. It was shown properly on the books as an indebtedness. And so the indebtedness did run directly to him by virtue of how it was shown in the books and records of the companies. And therefore, this met the requirement. I agree with the Supreme Court's taxpayers are ordinarily bound by the form of their transaction, may not argue that the substance of their transaction triggers different consequences. A taxpayer is free to organize his affairs as he chooses. Nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not. That's what I think about when I think about your two keystrokes argument. We accept the form and we believe that the form meets the standard under the regulation. Thank you, Mr. Rogo. We have your case and we'll be in recess until tomorrow morning.